Coby Halavais, Esq., Bar # 237107
Email.:  *coby@halavaislaw.com*
**HALAVAIS & ASSOCIATES, APC**
1 Orchard Rd., Suite 110
Lake Forest, California 92630-8315
Tel.:  (949) 305-8903
Fax.:  (949) 305-8406

ATTORNEYS FOR DEFENDANTS
Cardenas Three, LLC, Alta Loma Enterprises, LLC,
Jesus Cardenas, Jr., Jose Cardenas, Nefertiti U. Long

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re | Case No.  8:23-bk-10045-TA |
| | Chapter   7 |
| JACQUELINE MCKAY, | Adv. No. |
| | |
| Debtor. | **NOTICE OF REMOVAL** |
| _____ | |
| JACQUELINE MCKAY, | |
| | |
| Plaintiff, | |
| | |
| vs. | |
| | |
| CARDENAS THREE, LLC, *et al.*, | |
| | |
| Defendants. | |
| _____ | |

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that Defendants, Cardenas Three, LLC, Alta Loma Enterprises, LLC, Jesus Cardenas, Jr., Jose Cardenas, and Nefertiti U. Long, by and through counsel, hereby remove to this Court the State Court action numbered 30-2023-01321339 currently pending before the Orange County Superior Court ("the Action"), as follows:

1.    The Debtor initiated the instant Bankruptcy proceeding by filing of a Voluntary Petition on January 11, 2023.

-1-

2.    On April 26, 2023, Debtor commenced an Action in the Superior Court of the State of California, County of Orange, under case number 30-2023-01321339.  The Complaint filed on April 26, 2023 was and is the initial pleading in the Action.

3.    The Action presents issues and controversies involving property of the bankruptcy estate over which this Court has original and exclusive jurisdiction under 28 U.S.C. § 1334 and/or is so related to claims and controversies in this action which are within the Court's original and exclusive jurisdiction that they form part of the same case or controversy such that they may be removed by Defendants pursuant to 28 U.S.C. § 1452(a).

4.    The Action is "core" as that term is defined at 28 U.S.C. § 157(b)(2)(K).

5.    Pursuant to 28 U.S.C. § 1446(a), Defendants attach the following documents:

Exhibit A      Verified Complaint (operative pleading)

6.    Based on the foregoing, Defendants hereby remove the action to the United States Bankruptcy Court for the Central District of California, Santa Ana Division.

**HALAVAIS & ASSOCIATES, APC**

Dated: June 7, 2023        By: /s/ Coby Halavais
                           Coby Halavais, Esq.
                           Attorney for Defendants

-2-

**Exhibit "A"**

Jacqueline Ann McKaye
1784 Del Mar Ave.
Laguna Beach, CA  92651
P: (949) 339-7824
Jackie.McKaye@bluestem.com

Jacqueline McKaye, In Pro Per

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

APR 2 6 2023

DAVID H. YAMASAKI, Clerk of the Court

BY:_____:DEPUTY

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

**30-2023**

JACQUELINE ANN MCKAYE,
an individual,

               Plaintiff,

v.

CARDENAS THREE, LLC, a California
limited liability company; C&H TRUST
DEED SERVICE, an unknown entity;
SPENCER CURRIE, an individual; ALTA
LOMA ENTERPRISES, LLC, a California
limited liability company; JESUS
CARDENAS, JR. an individual; JOSE
CARDENAS, an individual; THANYA
MERCADO, an individual; NEFERTITI
U. LONG, an individual; and,
GERARDO ROA MACIAS, JR., an
individual.

               Defendants

CASE NO. **0 1 3 2 1 3 3 9**

VERIFIED COMPLAINT: T. McConville

1. TO SET ASIDE WRONGFUL NON-JUDICAL FORECLOSURE, CONDUCTED BASED ON EXTINGUISHED 2017 DEED OF TRUST
2. BREACH OF NOVATION AGREEMENT (THAT EXTINGUISHED 2017 DEED OF TRUST) PURSUANT TO CIV. CODE § 1531(1)
3. DECLARATORY RELIEF RE: VALIDITY OF NOVATION AGREEMENT, VOIDABLE FORECLOSURE SALE, AND PLAINTIFF'S RIGHT TO BID PURSUANT TO CIV. CODE § 2924m
4. WRONGFUL JUDICAL FORECLOSURE, BASED ON VIOLATION OF CIVIL CODE §§ 2924.19 AND 2924.17 FOR MONEY DAMAGES
5. MAKING AND ARRANGING REAL ESTATE LOANS WITHOUT REQUIRED STATE LICENSES
6. NEGLIGENT FAILURE TO RECORD 2020 CARDENAS DEED OF TRUST
7. FRAUDULENTLY NOTARIZED SIGNATURES
8. QUIET TITLE
9. ACCOUNTING

Assigned for All Purposes

-1-
Verified Complaint:  Jacqueline Ann McKaye v. Cardenas Three, LLC, et. al.

## PARTIES

1. JACQUELINE ANN MCKAYE ("Plaintiff" or McKaye") is an individual; a resident of the county of Orange, state of California; and, owner of the improved single family real property located at 1784 Del Mar Avenue, Laguna Beach, CA  92651 (the "Property"), where she lives as a single mother with her two sons, both attending Laguna Beach High School.

2. Plaintiff is informed and believes, and based thereon alleges, Defendant CARDENAS THREE, LLC ("Cardenas Three") was and is now, a limited liability company purportedly duly organized and in good standing in the state of California, however, not licensed in California as a Finance Lender, Real Estate Broker, or Mortgage Loan Originator.

3. Plaintiff is informed and believes, and based thereon alleges, that Defendant C&H TRUST DEED SERVICE ("C&H"), is an unknown entity, perhaps, an unregistered fictitious business of Coby Halavais, an individual and licensed attorney in California, with putative authority to act as an Agent or Trustee on behalf of Cardenas Three.

4. Plaintiff is informed and believes, and based thereon alleges, that Defendant SPENCER CURRIE ("Currie") is an individual, and resident of the county of Orange, state of California.

5. Plaintiff is informed and believes, and based thereon alleges, that Defendant ALTA LOMA ENTERPRISES, LLC ("Alta Loma"), was and is now, a limited liability company, purportedly duly organized and in good standing in the state of California, and an affiliate of Cardenas Three, however, not licensed in California as a Finance Lender, Real Estate Broker, or Mortgage Loan Originator.

6. Plaintiff is informed and believes, and based thereon alleges, that Defendant JESUS CARDENAS, JR. is an individual; a resident of the county of Orange, state of California; and, a

Verified Complaint:  Jacqueline Ann McKaye v. Cardenas Three, LLC, et. al.

principal owner of both Cardenas Three and Alta Loma.

7. Plaintiff is informed and believes, and based thereon alleges, that Defendant JOSE CARDENAS is an individual; a resident of the county of Orange, state of California; and, a principal owner of both Cardenas Three and Alta Loma.

8. Plaintiff is informed and believes, and based thereon alleges, that Defendant THANYA MERCADO ("Mercado") is an individual; a resident of the county of Orange, state of California; and an officer and/or employee of both Cardenas Three and Alta Loma.

9. NEFERTITI U. LONG ("Long") is an individual; a resident of the county of Orange, state of California; and an officer and/or employee of both Cardenas Three and Alta Loma.

10. Plaintiff is informed and believes, and based thereon alleges, that Defendant GERARDO ROA MACIAS, JR. ("Macias") is an individual; resident of the county of Orange, state of California; and was a licensed Notary in connection with the 2020 Refinance Transaction.

11. Whenever reference is made in this Complaint to any act of any Defendant(s), that allegation shall mean that each Defendant acted individually and jointly with the other Defendants. Any allegation about acts of any entity or other business Defendant, means that the corporation or other business did the acts alleged through its officers, directors, employees, agents, brokers and/or representatives while they were acting within the actual or ostensible scope of their authority. The exact terms and conditions of the agency, representation, or employment relationships are presently unknown to Plaintiff but when the information is ascertained, leave of court will be sought to insert appropriate allegations.

12. Plaintiff is informed and believes, and based thereon, alleges that at all relevant times, each Defendant committed the acts, caused or directed others to commit the acts, or

permitted others to commit the acts alleged in this Complaint. Additionally, some or all of the Defendants acted as the agent or the assignee or the substitute of other Defendants, and all Defendants acted within the scope of their agency if acting as an agent, the assignee or the substitute of another.  Further, Plaintiff is informed and believes, and based thereon, alleges that at all relevant times, each Defendant knew or realized that the other Defendants were engaging in or planned to engage in the violations of law alleged in this Complaint. Knowing or realizing that other Defendants were engaging in or planning to engage in unlawful conduct, each Defendant nevertheless facilitated the commission of those unlawful acts and, intended to and did facilitate or assist in the commission of the unlawful acts, and thereby aided and abetted the other Defendants in the unlawful conduct.

13. Plaintiff is further informed and believes, and based thereon, alleges that at all relevant times, Defendants have engaged in conspiracy, common enterprise, and common course of conduct, the purpose of which is and was to engage in the violations of law alleged in this Complaint. This conspiracy, common enterprise, and common course of conduct is continuing.  When additional facts are determined, Plaintiff will amend this Complaint to fully allege the scope and facts involving the conspiracy and common enterprise among the Defendants.

14.  Plaintiff is informed and believes, and based thereon, alleges that Jesus Cardenas, Jr. and Jose Cardenas own and control Cardenas Three, and that at all times herein mentioned there existed a unity of interest and ownership between Jesus Cardenas, Jr. and Jose Cardenas, on one hand, and Cardenas Three, on the other hand, such that any individuality and separateness between such individuals and entity ceased, and Jesus Cardenas, Jr. and Jose Cardenas are the alter ego of Cardenas Three, and Cardenas Three is the alter ego of Jesus

-4-

Cardenas, Jr. and Jose Cardenas, based the following facts, including, but not limited to:

(a) Cardenas Three is a mere entity shell or sham without adequate capital or assets and was conceived and used by Jesus Cardenas, Jr. and Jose Cardenas as a device to avoid individual liability and for the purpose of substituting a financially insolvent entity in their place.

(b) Jesus Cardenas, Jr. and Jose Cardenas personal finances and bank accounts were completely commingled with the entity finances and bank accounts of Cardenas Three, and personal funds were used to pay business expenses, and business funds were used to pay personal expenses;

(c) Cardenas Three was so inadequately capitalized that, compared with the business which Cardenas Three claimed it did and the risks of loss, any capitalization was illusory;

(d) The business of Cardenas Three was carried out without the observance of entity formalities, such as the holding of required entity or company meetings and/or the keeping of entity or company minutes of proceedings;

(e) The business of Cardenas Three was carried out without the observance of entity formalities, such as the holding of required entity or company meetings and/or the keeping of entity or company minutes of proceedings; and,

(f) Adherence to the fiction of the separate existence of Cardenas Three as an entity distinct from Jesus Cardenas, Jr. and Jose Cardenas would permit an abuse of the separate entity privileges, sanction a fraud, and promote injustice.

15. Plaintiff is informed and believes, and based thereon, alleges that Jesus Cardenas, Jr. and Jose Cardenas own and control Alta Loma, and that at all times herein mentioned there

Verified Complaint: Jacqueline Ann McKaye v. Cardenas Three, LLC, et. al.

existed a unity of interest and ownership between Jesus Cardenas, Jr. and Jose Cardenas, on one hand, and Alta Loma, on the other hand, such that any individuality and separateness between such individuals and entity ceased, and Jesus Cardenas, Jr. and Jose Cardenas are the alter ego of Alta Loma, and Alta Loma is the alter ego of Jesus Cardenas, Jr. and Jose Cardenas, based the following facts, including, but not limited to:

(a)   Alta Loma is a mere entity shell or sham without adequate capital or assets and was conceived and used by Jesus Cardenas, Jr. and Jose Cardenas as a device to avoid individual liability and for the purpose of substituting a financially insolvent entity in their place.

(b) Jesus Cardenas, Jr. and Jose Cardenas personal finances and bank accounts were completely commingled with the entity finances and bank accounts of Alta Loma, and personal funds were used to pay business expenses, and business funds were used to pay personal expenses;

(c)   Alta Loma was so inadequately capitalized that, compared with the business which Alta Loma claimed it did and the risks of loss, any capitalization was illusory;

(d) The business of Alta Loma was carried out without the observance of entity formalities, such as the holding of required entity or company meetings and/or the keeping of entity or company minutes of proceedings;

(e)   The business of Alta Loma was carried out without the observance of entity formalities, such as the holding of required entity or company meetings and/or the keeping of entity or company minutes of proceedings; and,

(f) Adherence to the fiction of the separate existence of Alta Loma as an entity distinct from Jesus Cardenas, Jr. and Jose Cardenas would permit an abuse of the separate entity

Verified Complaint: Jacqueline Ann McKaye v. Cardenas Three, LLC, et. al.

privileges, sanction a fraud, and promote injustice.

## THE ORIGINAL $806,000 CARDENAS THREE LOAN

16.  In January 2001, Plaintiff acquired the Property, together with her former husband David M. Brown.

17.  On or about January 20, 2017, Plaintiff refinanced the Property by borrowing $806,000 from Cardenas Three pursuant to a Promissory Note bearing interest at 9.2% (the "2017 Cardenas Promissory Note," which Plaintiff cannot currently locate), secured by a Deed of Trust recorded in first position against the Property (a copy of this "2017 Cardenas Deed of Trust" attached as **Exhibit "A"** hereto)(the "2017 Refinance Transaction").

## THE 2022 REFINANCE TRANSACTION

18.  On or about February 21, 2020, Plaintiff again refinanced the Property in a "2022 Refinance Transaction", by borrowing $608,465 from Caliber pursuant to a "2022 Caliber Promissory Note" (a copy of which is attached as **Exhibit "B"** hereto). Plaintiffs are informed and believe, and based thereon allege, that the $608,465 loan amount was determined by Defendants Alta Loma, Jesus Cardenas, Jr., Jose Cardenas, and Long, who arranged this loan for purposes of complying with FHA loan limits, although none of them were then, or are now, licensed in California as a Finance Lender, Real Estate Broker or Mortgage Loan Originator.

19.  This $608,465 loan was insured by the Federal Housing Administration ("FHA"). Therefore, as required by FHA rules and regulations, Plaintiff and Caliber intended, that the 2022 Cardenas Promissory Note *would be* secured by a Deed of Trust recorded in first position against the Property.  However, as explained as follows, the "2022 Caliber Deed of Trust" (a copy of which is attached as **Exhibit "C"** hereto) was erroneously recorded in second position

-7-

against the Property.

20. The proceeds from the $608,465 loan were applied to partial pay off the 2017 Cardenas Promissory Note, with the remaining principal and interest owed on the 2017 Cardenas Promissory Note reflected in:

(a) a new $245,647 Promissory Note from Plaintiff to Cardenas Three, bearing interest at 7.99% per annum, not requiring any monthly payments, due in two years and expressly stating that "[t]his note is secured by a Deed of Trust to First American Title, a California corporation, as TRUSTEE," (a copy of this "2022 Cardenas Note" is attached as **Exhibit "D"** hereto) and

(b) a new Deed of Trust stating that it secures "<u>one promissory note of even date herewith</u> ... <u>in the principal sum of $245,647</u> executed by Trustor in favor of Beneficiary... <u>This deed of trust is second and junior in lien to a deed of trust recording concurrently herewith.</u>" (a copy of this "2022 Cardenas Deed of Trust" is attached as **Exhibit "E"** hereto).

35. However, again the 2022 Cardenas Deed of Trust was <u>not</u> properly recorded, <u>nor</u> was any Reconveyance of the 2017 Cardenas Deed of Trust properly recorded. Nevertheless, Plaintiff contends that the 2022 Cardenas Promissory Note and 2022 Cardenas Deed of Trust constitute a **Novation Agreement**, extinguishing the 2017 Cardenas Deed of Trust.

## THE IMPROPER FORECLOSURE PROCESS

21. On February 24, 2022, the two year 2022 Cardenas Note became fully due and payable.

22. On June 30, 2022, Cardenas caused, through C&H, its purported agent, a **Notice of Default** to be recorded against the Property with the Orange County Recorder's Office (a copy of which is attached as **Exhibit "F"** hereto). However, rather than referencing the 2022

Verified Complaint: Jacqueline Ann McKaye v. Cardenas Three, LLC, et. al.

Cardenas Deed of Trust, this Notice of Default referenced the 2017 Cardenas Deed of Trust as giving C&H the power of sale.

23. On July 29, 2022, a Substitution of Trustee was recorded with the Orange County Recorder's Office, substituting C&H as Trustee in place of Title 365 the original Trustee under the 2017 Cardenas Deed of Trust.

24. September 22, 2022, Cardenas *unilaterally* executed a **Subordination Agreement** (a copy of which is attached as **Exhibit "G"** hereto), *that was not counter-signed by Caliber or Plaintiff, nor does it recite any consideration therefor*, asserting that:

> "(1) That the Cardenas Three lien [the 2017 Cardenas Deed of Trust] shall be and hereby is subordinated to be junior and inferior to the Caliber lien [the 2022 Caliber Deed of Trust], and any renewals or extensions thereof, and the Caliber lien shall unconditionally be and remain at all times a lien or charge on the Property senior, prior and superior to the Cardenas Three Deed of Trust. Additionally, the Notice of Default issued and recorded by Cardenas three, LLC, on June 30, 20022, as Instrument number 2022-00233302, as well as ay and all activities related in any way to foreclosure of the Cardenas Three Deed of Trust, shall not and does not impair, affect or challenge the priority, seniority and/or enforceability of the Caliber Deed of Trust."

No mention is made of the 2022 Cardenas Deed of Trust in this Subordination Agreement. A copy of this Subordination Agreement, recorded on September 28, 2022, with the Orange County Recorder's Office as Instrument No. 2022000319053, a copy of which is attached as **Exhibit "G"** hereto.

25. On September 30, 2022, Cardenas caused, through C&H, its Trustee, a **Notice of Trustee's Sale** to be recorded against the Property with the Orange County Recorder's Office (a copy of which is attached as **Exhibit "H"** hereto), scheduling a foreclosure sale on October 28, 2022.

26. On October 19, 2022, Caliber caused, through Quality Loan Service Corporation, its Truste, a **Notice of Default** to be recorded against the Property with the Orange County

-9-

Recorder's Office as Instrument No. 2022000338276, a copy of which is attached as **Exhibit "I"** hereto.

27. On October 28, 2022, McKaye filed a voluntary **Chp. 13 Bankruptcy Petition**, Case No. 2:22-bk-15894-WB, in the Central District of California, Los Angeles Division (the "Prior Bankruptcy Case"). On November 14, 2022, the McKaye file a Chapter 13 Plan. On November 18, 2022, Cardenas filed a Motion for Relief from the Automatic Stay. On December 14, 2022, Cardenas filed an Objection to Confirmation of Plan. On December 15, 2022, McKaye failed to appear for the Sec. 341(a) First Meeting of Creditors. On December 27, 2022, the Bankruptcy Court dismissed McKaye's Prior Bankruptcy Case, based on her failure to attend the Sec. 341(a) hearing.

28. The next day, on December 28, 2022, C&H conducted a foreclosure sale and the Property was sold to third-party buyer Spencer Currie ("Currie") for $725,100. That day, Currie purported provided C&H with a Declaration pursuant to Civ. Code §2924m asserting that he is an eligible bidder based on being a prospective owner occupant of the Property. A copy of Currie's Declaration is attached as **Exhibit "J"** hereto. However, C&H has contended that the foreclosure sale is final and there are no legitimate grounds for rescinding such sale.

29. On January 10, 2023, McKaye provided C&H with a Declaration pursuant to Civ. Code §2924m (attached as **Exhibit "K"** hereto) asserting that she is an eligible bidder based on being a prospective owner occupant of the Property and, not disqualified as a mortgagor on grounds that the: (a) $806,000 Deed of Trust recorded on January 20, 2017, in favor of Cardenas Three, LLC, as beneficiary, is void or voidable and (b) the $245,647.70 unrecorded Deed of Trust purportedly signed on February 24, 2020, in favor of Cardenas Three, LLC, as beneficiary, is fraudulent and therefore void or voidable.

-10-

Verified Complaint: Jacqueline Ann McKaye v. Cardenas Three, LLC, et. al.

30.(a).  On January 11, 2023, McKaye filed a voluntary **Chp. 7 Bankruptcy Petition,** Case No. 8:23-bk-10045-TA, in the Central District of California, Southern Division (the "Current Bankruptcy Case").  A continued Bank Code §341(a) hearing is set for May 4, 2023.

30.(b)  On January 12, 2023, C&H recorded a Trustee's Deed Upon Sale with respect to the Property in favor Currie with the Orange County Recorder's Office as Instrument No. 2022000338276, a copy of which is attached as **Exhibit "L"** hereto, purporting to transfer title to the Property to Currie.

31. On January 25, 2023, McKaye filed an **Adversary Complaint** in her Current Bankruptcy Case, Case No. 8:23-ap-01005-TA, in the Central District of California, Southern Division, alleging causes of action similar to those alleged herein. However, on March 23, 2023, she filed a voluntary Dismissal without prejudice of her Adversary Complaint.

<u>**SUMMARY OF CAUSES OF ACTION AND REMEDIES**</u>

32. Plaintiff McKaye brings this action to <u>set aside the wrongful December 28, 2022, non-judicial foreclosure sale</u> conducted by Defendant C&H, Trustee, on behalf of Defendant Cardenas Three, against her Home which she has owned since January 5, 2001, and is currently valued at approximately $1,700,000, or, in the alternative, for money damages.

33. The foreclosure sale should be set aside because the February 24, 2020, refinance transaction (the "2020 Refinance Transaction") was intended to, and should have involved:

(a) the recording of a Deed of Trust securing a $608,465 loan to Plaintiff from Caliber Home Loans, Inc. ("Caliber"), insured by the Federal Housing Administration ("FHA"), in <u>first position</u> against the Property (the "2022 Caliber Deed of Trust"), and

(b) the recording of a Deed of Trust securing a $245,647 loan to Plaintiff from Cardenas Three, in <u>second position</u> against the Property.  However, this "2022 Cardenas Deed of Trust",

-11-

which expressly stated "is second and junior in lien to a deed of trust recording concurrently herewith," was never recorded.

34. The two loans in the 2020 Refinance Transaction were arranged by (a) Defendant Alta Loma, that is owned by Defendants Jesus Cardenas, Jr. and Jose Cardenas, also the owners of Defendant Cardenas Three, and (b) Defendants Thanya Mercado and Nefertiti U. Long, who were officers or employees of both Alta Loma Enterprises and Cardenas Three. None of these Defendants were or are now licensed as real estate brokers or agents by the California Department of Real Estate.

35. When Plaintiff fell behind on payments to Cardenas Three, notwithstanding the 2022 Refinance Transaction and contrary to the 2022 Cardenas Deed of Trust, Trustee C&H recorded a Notice of Default on June 30, 2022, that referenced a prior Deed of Trust recorded January 20, 2017, securing a $608,465 loan to Plaintiff from Cardenas Three that erroneously remained in first position against the Property (the "2017 Cardenas Deed of Trust").

36. Plaintiff contends the February 21, 2020, $245,647 Promissory Note from Plaintiff to Cardenas Three, expressly to be secured by the "2022 Cardenas Deed of Trust" in the 2020 Refinance Transaction, constitutes a **Novation Agreement** that extinguished the 2017 Cardenas Deed of Trust.

37. In an apparent attempt to rectify the erroneous lien priorities, on September 28, 2022, Cardenas Three executed a **Subordination Agreement** by itself, not with Caliber nor with the McKaye, agreeing to subordinate the 2017 Cardenas Deed of Trust. No consideration is recited in the Subordination Agreement as having been paid by or between Caliber, Cardenas Three or Plaintiff.

-12-
Verified Complaint: Jacqueline Ann McKaye v. Cardenas Three, LLC, et. al.

38. For all the above reasons, Plaintiff contends that the foreclosure sale conducted based on the extinguished 2017 Cardenas Deed of Trust was wrongful and should be set aside; that the Novation Agreement is valid and was breached by Cardenas Three and C&H; and, that the Notice of Default and Subordination Agreement are voidable by Plaintiff.

39. In the alternative, in the event the Court finds that the foreclosure was wrongful, however, should not be rescinded, then, pursuant to Civil Code §§ 2924.19 and 2924.17, the Court should award Plaintiff the greater of treble actual damages or statutory damages of fifty thousand dollars ($50,000).

## FIRST CAUSE OF ACTION
### TO SET ASIDE WRONGFUL NON-JUDICAL FORECLOSURE, CONDUCTED BASED ON EXTINGUISHED 2017 DEED OF TRUST
**(Against Cardenas and C&H)**

40. Plaintiff realleges and incorporates by reference each and every allegation above, as though set forth fully herein.

41. On December 28, 2022, Cardenas and C&H caused a foreclosure sale of Plaintiff's Property purportedly pursuant to the power of sale in the 2017 Cardenas Deed of Trust, exercised in (a) the June 30, 2022, Cardenas Notice of Default attached as Exhibit "F" hereto, and (b) the September 30, 2022, Cardenas Notice of Trustee's Sale attached as Exhibit "I" hereto.

42. The foreclosure sale was wrongful because in the 2022 Refinance Transaction, the 2020 Cardenas Note and 2022 Cardenas Deed of Trust as intended by Plaintiff, Cardenas, Caliber and FHA, constituted a Novation Agreement as a matter of law pursuant to Civ. Code §1531(1), such that: (a) Plaintiff's obligation under the 2017 Cardenas Note was extinguished and the 2022 Cardenas Note was substituted therefor, and (b) the 2017 Cardenas Deed of Trust was also extinguished, such that no power of sale continued to exist under the 2017

-13-

Cardenas Deed of Trust, notwithstanding that there was no Reconveyance of the 2017 Cardenas Deed of Trust.

43. Plaintiff is ready, willing and able to tender all amounts that are due to Cardenas under the 2020 Note, however, Cardenas and C&H have not provided an itemization of such amounts. Except for late payment on the 2022 Cardenas Note, Plaintiff was not in material default of any other terms of the 2022 Cardenas Note.

44. As a direct and proximate result of Defendants Cardenas' and C&H's wrongful foreclosure, Plaintiff has suffered irreparable harm by the loss of her Property, which can only be remedied by a rescission of the foreclosure sale. In the alternative, Plaintiff prays for money damages measure by the value of her total equity in the Property, plus consequential damages caused by Defendants tortious conduct.

## SECOND CAUSE OF ACTION
### BREACH OF NOVATION AGREEMENT (THAT EXTINGUISHED 2017 DEED OF TRUST) PURSUANT TO CIV. CODE, SEC. 1531(1)
#### (Against Cardenas and C&H)

45. Plaintiff realleges and incorporates by reference each and every allegation above, as though set forth fully herein.

46. Plaintiffs allege that in the 2022 Refinance Transaction, the 2020 Cardenas Note and 2022 Cardenas Deed of Trust as intended by Plaintiff, Cardenas, Caliber and FHA, constituted a Novation Agreement as a matter of law pursuant to Civ. Code §1531(1), such that: (a) Plaintiff's obligation under the 2017 Cardenas Note was extinguished and the 2022 Cardenas Note was substituted therefor, and (b) the 2017 Cardenas Deed of Trust was also extinguished, such that no power of sale continued to exist under the 2017 Cardenas Deed of Trust, notwithstanding that there was no Reconveyance of the 2017 Cardenas Deed of Trust.

46. By recording the June 30, 2022, Cardenas Notice of Default and the September 30,

-14-

Verified Complaint: Jacqueline Ann McKaye v. Cardenas Three, LLC, et. al.

2022, Cardenas Notice of Trustee's Sale, and by conducting the December 28, 2022, foreclosure purportedly based on the continuing power of sale in the 2017 Cardenas Deed of Trust, Defendants Cardenas and C&H breached the Novation Agreement.

48.  As a direct and proximate result of Defendants Cardenas' and C&H's wrongful foreclosure, Plaintiff has suffered irreparable harm by the loss of her Property, which can only be remedied by a rescission of the foreclosure sale.  In the alternative, Plaintiff prays for money damages measure by the value of her total equity in the Property, plus consequential damages caused by Defendants' breach.

### THIRD CAUSE OF ACTION
### DECLARATORY RELIEF RE: VALIDITY OF NOVATION AGREEMENT, VOIDABLE FORECLOSURE SALE, AND PLAINTIFF'S RIGHT TO BID PURSUANT TO CIV. CODE, SEC. 2924m
### (Against Cardenas, C&H and Currie)

49.  Plaintiff realleges and incorporates by reference each and every allegation above, as though set forth fully herein.

50.  Plaintiffs are informed and believe and, based thereon allege, that actual and present controversies exist between Plaintiff, on one hand, and Defendants Cardenas, C&H and Currie, on the other hand, in that Plaintiff contends, and such Defendants deny, that:

(a) in the 2022 Refinance Transaction, the 2020 Cardenas Note and 2022 Cardenas Deed of Trust as intended by Plaintiff, Cardenas, Caliber and FHA, constituted a Novation Agreement as a matter of law pursuant to Civ. Code §1531(1), such that: (a) Plaintiff's obligation under the 2017 Cardenas Note was extinguished and the 2022 Cardenas Note was substituted therefor, and (b) the 2017 Cardenas Deed of Trust was also extinguished, such that no power of sale continued to exist under the 2017 Cardenas Deed of Trust, notwithstanding that there was no Reconveyance of the 2017 Cardenas Deed of Trust;

-15-
Verified Complaint: Jacqueline Ann McKaye v. Cardenas Three, LLC, et. al.

(b) by reason of the Novation Agreement, the June 30, 2022, Cardenas Notice of Default, the September 30, 2022, Cardenas Notice of Trustee's Sale, and the December 28, 2022, foreclosure sale are voidable by Plaintiff, or otherwise constitute breaches of the Novation Agreement, notwithstanding the Subordination Agreement which fails to constitute a valid agreement due to lack of mutual consent and lack of consideration; and,

(c) pursuant to Civ. Code §2924m, Plaintiff qualifies as an eligible bidder and prospective owner occupant, such that Plaintiff made make a Bid with respect to the Property within provisions of this section.

51. Therefore, Plaintiff request that the Court review all the documents attached to or referred to in this Adversary Complaint and make interpretative declarations as a matter of law in Plaintiff's favor as Plaintiff contends above.

### FOURTH CAUSE OF ACTION
### WRONGFUL JUDICAL FORECLOSURE, BASED ON
### VIOLATION OF CIVIL CODE §§ 2924.19 AND 2924.17
### FOR MONEY DAMAGES
(Against Cardenas, Mercado Long and C&H)

52. Plaintiff realleges and incorporates by reference each and every allegation above, as though set forth fully herein.

53. Plaintiff is informed and believes and, based thereon alleges, that notwithstanding (a) Plaintiff's counsel's Demand on C&H to not record a Trustee's Deed Upon Sale in favor of Currie, and (b) the Automatic Stay, that C&H has nevertheless recorded such a Trustee's Deed Upon Sale.

54. California Civil Code, Sec. 2924.19(b), provides that:

"After a trustee's deed upon sale has been recorded, a mortgage servicer, mortgagee, beneficiary, or authorized agent shall be liable to a borrower for actual economic damages pursuant to Section 3281, resulting from a material violation of Section 2923.5, 2924.17, or 2924.18 by that mortgage servicer,

-16-

mortgagee, beneficiary, or authorized agent where the violation was not corrected and remedied prior to the recordation of the trustee's deed upon sale. If the court finds that the material violation was intentional or reckless, or resulted from willful misconduct by a mortgage servicer, mortgagee, beneficiary, or authorized agent, the court may award the borrower the greater of treble actual damages or statutory damages of fifty thousand dollars ($50,000)."

55. California Civil Code, Sec. 2924.17, provides that:

"(a) A declaration recorded pursuant to Section 2923.5 or pursuant to Section 2923.55, a notice of default, notice of sale, assignment of a deed of trust, or substitution of trustee recorded by or on behalf of a mortgage servicer in connection with a foreclosure subject to the requirements of Section 2924, or a declaration or affidavit filed in any court relative to a foreclosure proceeding shall be accurate and complete and supported by competent and reliable evidence.

56. Plaintiff is informed and believes and, based thereon alleges, that Cardenas, as lender and beneficiary; Mercado and Long, as Senior Loan Officers with Cardenas; and C&H, as Trustee agent, had numerous opportunities to verify, correct and remedy faulty documents, and the improper priority of deeds of trust so as to be properly consistent with the intentions of Plaintiff, Cardenas Caliber and FHA following the 2022 Refinance Transaction, both before and after the Cardenas Notice of Default was recorded, the Substitution of Trustee was recorded substituting C&H as Trustee, the Subordination Agreement was executed and recorded and, the Cardenas Notice of Trustee's Sale was recorded, however, Defendants Cardenas, Mercado, Long and C&H intentionally or recklessly failed to verify, correct and remedy faulty documents, or engaged in willful misconduct in authorizing and recording a Trustee's Deed Upon Sale.

57. In particular, on November 18, 2022, Cardenas filed a Motion for Relief from Stay in McKaye's Prior Bankruptcy Case, supported by a Declaration from Long, describing a default on the 2022 Cardenas Note, however, inconsistently referring to the 2017 Cardenas Deed of Trust. This Court is requested to take Judicial Notice of ROA #19 in McKaye's Prior

-17-

Bankruptcy Case.

58. Defendants' actions and failure to act constitute violations of Civ. Code, Sec. 2924.19(b).

59. As a direct and proximate result of Defendants Cardenas', Mercado's, Long's and C&H's violations of Civ. Code, Sec. 2924.19(b), Plaintiff has suffered irreparable harm by the loss of her Property. In the alternative, if the Court does not set aside and rescind the foreclosure sale as requested in Plaintiff's other causes of action herein, then, in the alternative, Plaintiff prays for money damages as authorized by Civil Code, Sec. 2924.19(b), of the greater of treble actual damages or statutory damages of fifty thousand dollars ($50,000).

**FIFTH CAUSE OF ACTION**
**MAKING AND ARRANGING REAL ESTATE LOANS**
**WITHOUT THE REQUIRED STATE LICENSES**
**(Against Cardenas, Alta Loma, Jesus Cardenas, Jr., Jose Cardenas, Mercado and Long)**

60. Plaintiff realleges and incorporates by reference each and every allegation above, as though set forth fully herein.

61. Plaintiff is informed and believes and, based thereon alleges, that Cardenas (a) has never held any type of license from any state of California regulatory agency, issued pursuant to Finance Lender Laws or Real Estate Broker Laws, authorizing Cardenas to make a loan secured by real property, particularly, not a high interest, hard money loan, based on the equity in a property, not based on the borrower's ability to repay such loan and (b) is not exempt from all such licensing statutes and regulations.

62. Plaintiff is informed and believes and, based thereon alleges, that (a) neither Alta Loma, Jesus Cardenas, Jr., Jose Cardenas, Mercado, nor Long have ever held any type of license from any state of California regulatory agency, issued pursuant Real Estate Broker Laws or Mortgage Loan Originator Laws, authorizing such entity and persons to arrange or

-18-

broker any loans on behalf of any lender, including, on behalf of Cardenas, and (b) such entity and persons are not exempt from all such licensing statutes and regulations.

63. Plaintiff would not have entered into the 2017 Refinance Transaction and the 2022 Refinance Transaction, is such Defendants had disclosed, so that she would have known, that such Defendants were not properly licensed to be involved in such transactions by the appropriate state of California regulatory agencies.

64. As a direct and proximate result of Defendants Cardenas', Alta Loma's, Jesus Cardenas, Jr.'s, Jose Cardenas', Mercado's and Long's failure to obtain and hold the requisite licenses from the pertinent state of California regulatory agencies, Plaintiff (a) entered into the 2017 Refinance Transaction and the 2022 Refinance Transaction and (b) subsequently, Cardenas wrongful foreclosed on her Property. As a result, Plaintiff has suffered irreparable harm by the loss of her Property.

65. By reason of Defendants failure to obtain and hold the requisite licenses from the pertinent state of California regulatory agencies, Plaintiff is entitled to declare and, hereby declares, that the 2017 Refinance Transaction and the 2022 Refinance Transaction are voidable. Plaintiff also prays for rescission of the foreclosure sale. In the alternative, Plaintiff prays for money damages measure by the value of her total equity in the Property, plus consequential damages caused by Defendants' statutory violations.

### SIXTH CAUSE OF ACTION
### NEGLIGENT FAILURE TO RECORD 2020 CARDENAS DEED OF TRUST
**(Against Cardenas)**

66. Plaintiff realleges and incorporates by reference each and every allegation above, as though set forth fully herein.

67. Both the 2022 Cardenas Note and 2022 Cardenas Deed of Trust expressly state that

-19-

such loan and deed and trust were to be junior and recorded in a second position against Plaintiff's Property. Accordingly, Cardenas owed a duty of care to Plaintiff (a) as payor under 2022 Cardenas Note and as trustor under the 2022 Cardenas Deed of Trust, and (b) in Cardenas' capacity as payee under 2022 Cardenas Note and the beneficiary under the 2022 Cardenas Deed of Trust, to ensure that the 2022 Cardenas Deed of Trust was, in fact, recorded in a second position against Plaintiff's Property.

68. In the 2022 Refinance Transaction, Cardenas breached its duty of care to Plaintiff by failing to ensure that the 2022 Cardenas Deed of Trust was, in fact, recorded in a second position against Plaintiff's Property. Instead, Cardenas (a) failed to record the 2022 Cardenas Deed of Trust, (b) allowed the 2017 Cardenas Deed of Trust to remain in senior, first priority position against the Property via-a-vis the Caliber Deed of Trust, and, (c) Cardenas failed to ensure that the 2017 Cardenas Deed of Trust was reconveyed.

69. As a direct and proximate result of Defendant Cardenas' negligence, Plaintiff has suffered irreparable harm by the loss of her Property, which can only be remedied by a rescission of the foreclosure sale. In the event that the Court does declare not set aside and rescind the foreclosure sale then, in the alternative, Plaintiff prays for money damages measure by the value of her total equity in the Property, plus consequential damages caused by Defendant's negligence.

## SEVENTH CAUSE OF ACTION
### FRAUDULENTLY NOTARIZED SIGNATURES
**(Against Macias)**

70. Plaintiff realleges and incorporates by reference each and every allegation above, as though set forth fully herein.

71. Plaintiff is informed and believes and, based thereon alleges, that in connection

-20-

with the 2022 Refinance Transaction, Defendant Macias was the licensed Notary, whose purported signature is on the 2020 Cardenas Note and 2020 Cardenas Deed of Trust.

72.  Plaintiff alleges that her apparent signatures on the 2020 Cardenas Note and 2020 Cardenas Deed of Trust are not her genuine signatures and, instead, are false and forged.

73.  Plaintiff is informed and believes and, based thereon alleges, that in connection with the 2022 Refinance Transaction, Defendant Macias or other Defendants acting in concert with him and pursuant to a conspiracy with him, falsified and forged Plaintiff's signatures on the 2020 Cardenas Note and 2020 Cardenas Deed of Trust.

74.  As a direct and proximate result of Defendant Macias' fraud, Plaintiff has suffered irreparable harm by the loss of her Property, which can only be remedied by a rescission of the foreclosure sale.  In the alternative, if the Court does declare not set aside and rescind the foreclosure sale, then, Plaintiff prays for money damages measure by the value of her total equity in the Property, plus consequential damages caused by Defendant's fraud.

### EIGHTH CAUSE OF ACTION
### QUIET TITLE
### (Against Currie)

75.  Plaintiff realleges and incorporates by reference each and every allegation above, as though set forth fully herein.

76.  By reason of (a) the December 28, 2022, foreclosure sale to Currie, and, perhaps, due to a Trustee's Deed Upon Sale being recorded in Currie's favor, and (b) both Currie and Plaintiff providing C&H with Declarations pursuant to Civ. Code §2924m, confusion currently exists as to whether Plaintiff or Currie owns the Property and, whether Plaintiff and Currie are entitled to submit a Bid pursuant to Civ. Code §2924m.

77.  As such, clouds exist on Plaintiff's interests in her Property.

-21-

Verified Complaint:  Jacqueline Ann McKaye v. Cardenas Three, LLC, et. al.

78.  Accordingly, Plaintiff requests that the Court issue an Order declaring that the foreclosure sale is void or voidable, and Quieting Title to the Property in favor of Plaintiff and against Currie.

### EIGHTH CAUSE OF ACTION
### ACCOUNTING
### (Against Cardenas and C&H)

79.  Plaintiff realleges and incorporates by reference each and every allegation above, as though set forth fully herein.

80.  Notwithstanding the foreclosure sale, Plaintiff has made Demand upon Cardenas and C&H for an itemization of all amounts due on the 2022 Cardenas Note as of the foreclosure sale, however, Cardenas and C&H have failed and refused to provide such itemization and accounting.

81.  In addition, assuming the foreclosure sale is respected, Plaintiff has made Demand upon C&H for an itemization of any Surplus Funds, measured by the difference between the $725,100 paid by Currie at the foreclosure sale and the total amount due to Cardenas on the 2022 Cardenas Note, plus all related C&H foreclosure costs, however, C&H has failed and refused to provide such itemization and accounting.

82.  Accordingly, Plaintiff requests that the Court issue an Order (a) requiring Cardenas and C&H to itemize and account for all amounts due on the 2022 Cardenas Note, and (b) requiring C&H to itemize and account for the amount of any Surplus Funds.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff seeks a Judgment against Defendants, as set forth at the end of each Cause of Action above and, in addition, as follows:

-22-

## AND ON ALL CAUSES OF ACTION

1.  For recovery of attorneys' fees incurred;

2.  For recovery of the costs of suit;

3.  For interest on all damages at the maximum legal rate; and,

4.  For such other and further relief as the Court may deem just and proper.


Dated: April 25, 2023

Jacqueline Ann McKaye, Plaintiff
and McKaye, In Pro Per

-23-

## VERIFICATION TO COMPLAINT

I, Jacqueline McKaye, declare as follows:

I am the Plaintiff in the above-captioned Verified Complaint.

I have read the foregoing Verified Complaint and know the contents thereof, which are true to the best of my knowledge, except as to those matters which are alleged on information and belief, and as to those allegations, I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct. Executed this April 25, 2023, at Laguna Beach, California.

Jacqueline McKaye

*Received by email*

Verified Complaint: Jacqueline Ann McKaye v. Cardenas Three, LLC, et. al.

EXHIBIT "A"

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

**Title365**

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖ 63.00
* $ R 0 0 0 9 0 1 1 6 9 $ *
**2017000028437 3:42 pm 01/20/17**
227 NC-5 D11 F13   19
0.00 0.00 0.00 0.00 54.00 0.00 0.00 0.00

After Recording Return To:

Cardenas Three LLC
Attn: Roxanne Kwan
12223 Highland Ave., Suite 106-553
Rancho Cucamonga, CA 91739

QA0210-100088880-20 _____ [Space Above This Line For Recording Data] _____

## DEED OF TRUST

### DEFINITIONS

Words used in multiple sections of this Security Instrument are defined below, in the "Definitions" Section of the Deed of Trust, and in Sections 3, 11, 13, 18, 20 and 21 of the Deed of Trust. Certain rules regarding the usage of words used in this Security Instrument are also provided in Section 16 of the Deed of Trust.

(A)   "Security Instrument" means this document, which is dated January 19th, 2017 together with all Riders to this document.

(B)   "Borrower" is Jacqueline McKaye. Borrower is the trustor under this Security Instrument.

(C)   "Lender" is Cardenas Three LLC. Lender's address is Cardenas Three LLC 12223 Highland Ave., Suite 106-553 Rancho Cucamonga, CA 91739. . Lender is the beneficiary under this Security Instrument.

(D)   "Trustee" is Title 365.

(E)   "Note" means the promissory note signed by Borrower and dated January 19th, 2017. The Note states that Borrower owes Eight Hundred Six Thousand Dollars (U.S. $806,000.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments (as defined in the Deed of Trust) and to pay the debt in full not later than February 01, 2019

(F)   "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G)   "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H)   "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Condominium Rider      ☐ Second Home Rider
☐ Planned Unit Development Rider  ☐ 1-4 Family Rider

Page | 1

All references to section numbers in the Security Instrument that are contained in the Riders refer to those sections of the same number incorporated from the Deed of Trust.

(I)   **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J)   **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K)   **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L)   **"Escrow Items"** means those items that are described in Section 3.

(M)   **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N)   **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O)   **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P)   **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.


TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender:  (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of Los Angeles:

[SEE EXHIBIT A]

which currently has the address of 1784 Del Mar Ave Laguna Beach, CA 92651

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

Page | 2

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the

Page | 3

delinquent payment and the late charge.   If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full.   To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.   Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.   **Funds for Escrow Items.**   Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items."   At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any,
be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items.   Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time.  Any such waiver may only be in writing.  In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9.   If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount.   Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA.   Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

Page | 4

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.   Charges; Liens.**   Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5.   Property Insurance.**   Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term

Page | 5

"extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may

disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower does intend to occupy, establish, or use the Property as Borrower's principal residence as of the execution of this Security Instrument.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that

Page | 8

were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be

applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Page | 10

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason
of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.
Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees,

Page | 11

property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b ) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times

Page | 13

without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Page | 14

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22.   Acceleration; Remedies.   Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall

Page | 15

apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument (including those provisions of the Deed of Trust that are incorporated by reference) and in any Rider executed by Borrower and recorded with it.

[SIGNATURES ON NEXT PAGE]

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to the Borrower at the address set forth above.

Date: 1/20/17

Jacqueline McKaye

_____ [Space Below This Line For Acknowledgment] ═══════════════

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of Orange                        )

On January 20, 2017 -before me, Katrina M. Belmonte, Notary Public

personally appeared Jacqueline McKaye                                ,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

KATRINA M. BELMONTE
COMM. # 2090757
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
COMM. EXPIRES DEC. 9, 2018

Signature _____ (Seal)

Page | 17

**EXHIBIT A**
Legal Description

The land hereinafter referred to is situated in the City of Laguna Beach, County of Orange, State of CA, and is described as follows:

Lot 8, Block in Block 64, of Arch Beach Heights, in the City of Laguna Beach, County of Orange, State of California; as per map recorded in Book 7, Page 9 and 10 of Miscellaneous Maps, in the Office of the County Recorder of said County.

APN: 644-461-10

EXHIBIT "B"

Generated by PDFKit.NET Evaluation



Loan Numl
MIN
FHA Case No.

## NOTE

FEBRUARY 24, 2020 _____ TORRANCE _____ , CALIFORNIA _____
    [Date]                  [City]                      [State]

1784 DEL MAR AVE, LAGUNA BEACH, CALIFORNIA 92651-3812
                    [Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $608,465.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **CALIBER HOME LOANS, INC.** I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **3.500%**.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month

I will make my monthly payment on the 1ST day of each month beginning on **APRIL 1, 2020**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **MARCH 1, 2050**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **P.O. BOX 650856, DALLAS, TX 75265-0856** or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. **$2,732.28**

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **4.00%** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

© 2020 Covius Services, LLC
FHA MULTISTATE FIXED RATE NOTE (1/21/15)
HC# 4837-1414-4806v3

*Page 1 of 2*

Click here to unlock PDFK

Generated by PDFKit.NET Evaluation

7. **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together  This means that any one of us may be required to pay all of the amounts owed under this Note

9. **WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid

10. **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note  Some of those conditions are described as follows

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
Borrower -  JACQUELINE ANN MCKAYE BROWN

*[Sign Original Only]*

Loan Originator Organization. CALIBER HOME LOANS. INC.
NMLS I██████
Loan Originator  N/A
NMLS ID: N/A

Loan Originator Organization: EQUINOX HOME FINANCING. INC.
NMLS I██████
Loan Originator: JOHN DOAN
NMLS I██████

Pay to the order of

Without Recourse
Caliber Home Loans, Inc.

Jason Spencer
Operations Support Manager

© 2020 Covius Services. LLC
FHA MULTISTATE FIXED RATE NOTE (1/21/15)
HC# 4837-1414-4806v3

*Page 2 of 2*

Click here to unlock PDFK

# EXHIBIT "C"

Recorded In Official Records, Orange County
Huoh Nauven. Clerk-Recorder

█████████████████████████ 52.00

2020000088140 10:24 am 02/28/20
227 NCR2 D11    15
0.00 0.00 0.00 0.00 42.00 0.00 0.000.000.00 3.00

RECORDING REQUESTED BY

FIRST AMERICAN TITLE CO
GLENDALE

After Recording Return To:

FIRST AMERICAN MORTGAGE
SOLUTIONS ON BEHALF OF
CALIBER HOME LOANS
1795 INTERNATIONAL WAY
IDAHO FALLS, ID 83402

Prepared By:
CALIBER HOME LOANS, INC.
1525 S. BELT LINE ROAD
COPPELL, TX 75019

───── [Space Above This Line For Recording Data] ─────────────

Assessor's Identification Number

Loan Numbe █████████
MERS Number█████████
FHA Case No.
████████████

# DEED OF TRUST

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 15.

(A)    "Security Instrument" means this document, which is dated **FEBRUARY 24, 2020**, together with all Riders to this document.
(B)    "Borrower" is JACQUELINE ANN MCKAYE BROWN, AN UNMARRIED WOMAN. Borrower's address is 1784 DEL MAR AVE, LAGUNA BEACH, CALIFORNIA 92651-3812. Borrower is the trustor under this Security Instrument.
(C)    "Lender" is CALIBER HOME LOANS, INC.. Lender is a CORPORATION organized and existing under the laws of DELAWARE. Lender's address is 1525 S. BELT LINE ROAD, COPPELL, TX 75019.
(D)    "Trustee" is FIRST AMERICAN TITLE COMPANY 207 GOODE AVENUE, SUITE 410 GLENDALE CA 91203.
(E)    "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F)    "Note" means the promissory note signed by Borrower and dated FEBRUARY 24, 2020. The Note states that Borrower owes Lender SIX HUNDRED EIGHT THOUSAND FOUR HUNDRED SIXTY-FIVE AND 00/100THS Dollars (U.S. $608,465.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than MARCH 01, 2050.
(G)    "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

FHA CALIFORNIA DEED OF TRUST
HC# 4830-2803-2036v2
© 2020 Covius Services, LLC

*(page 1 of 13 pages)*

Exempt from fee per GC 27388.1 (a) (2); recorded concurrently in connection with a transfer of real property that is a residential dwelling to an owner-occupier

(H)    "Loan"  means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I)    "Riders"  means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:

☐ Condominium Rider            ☐ Growing Equity Rider            ☐ Adjustable Rate Rider

☐ Planned Unit Development Rider      ☐ Graduated Payment Rider      ☐ Non-Owner Occupied Rider

☐ Revocable Trust Rider

(J)    "Applicable Law"  means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K)    "Community Association Dues, Fees, and Assessments"  means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)    "Electronic Funds Transfer"  means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)    "Escrow Items"  means those items that are described in Section 3.

(N)    "Miscellaneous Proceeds"  means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)    "Mortgage Insurance"  means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)    "Periodic Payment"  means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)    "RESPA"  means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R)    "Secretary"  means the Secretary of the United States Department of Housing and Urban Development or his designee.

(S)    "Successor in Interest of Borrower"  means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS.  This Security Instrument secures to Lender:  (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of

Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the __County__ [Type of Recording Jurisdiction] of __ORANGE__ [Name of Recording Jurisdiction]:

**LEGAL DESCRIPTION ATTACHED HERETO AND MADE PART HEREOF**

which currently has the address of **1784 DEL MAR AVE** _____

_____ , California _____ [Street]

**LAGUNA BEACH**_____ , California   **92651-3812**   ("Property Address"): SEE ATTACHED EXHIBIT 'A'
[City]   [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

FHA CALIFORNIA DEED OF TRUST
HC# 4830-2803-2036v2                                                                    *(page 3 of 13 pages)*
© 2020 Covius Services, LLC

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and,

Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If

there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

FHA CALIFORNIA DEED OF TRUST
HC# 4830-2803-2036v2                                                                                                    *(page 5 of 13 pages)*
© 2020 Covius Services, LLC

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent

gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

FHA CALIFORNIA DEED OF TRUST
HC# 4830-2803-2036v2                                                    *(page 7 of 13 pages)*
© 2020 Covius Services, LLC

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.   "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.**   Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower.   Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower.  Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.**  Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument.  Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing.  The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

13. **Loan Charges.**  Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees.  Lender may collect fees and charges authorized by the Secretary.  Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

14. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

15. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

16. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

17. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage loan. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred;

FHA CALIFORNIA DEED OF TRUST
HC# 4830-2803-2036v2                                                          *(page 9 of 13 pages)*
© 2020 Covius Services, LLC

(b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding; (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

19. **Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

20. **Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any

Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the

FHA CALIFORNIA DEED OF TRUST
HC# 4830-2803-2036v2                                                                      (page 11 of 13 pages)
© 2020 Covius Services, LLC

name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to Borrower at the address set forth above.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.
Witnesses:

_____
Witness -

_____
Witness -

_____ (Seal)
Borrower - JACQUELINE ANN MCKAYE BROWN

EXHIBIT "D"

DO NOT DESY THIS NOTE: When paid, this note wl eed of Trust securing same,
must be su.._ndered to Trustee for cancellation before reconveyance will be made

---

## NOTE SECURED BY DEED OF TRUST
## STRAIGHT NOTE

**$245,647.70**                                                    Date: **February 21, 2020**

LAGUNA BEACH, California.

ON OR BEFORE **February 24, 2020** For Value Received, I promise to pay to **CARDENAS THREE LLC**

or order, at _____

the principal sum of **TWO HUNDRED FORTY FIVE THOUSAND SIX HUNDRED FORTY SEVEN AND 70 CENTS**
( **$ 245,647.70),**

with interest from _____ until paid at the rate of 7.99 per cent per annum, payable **CARDENAS THREE LLC**

THIS NOTE IS DUE IN A LUMP SUM IN 24 MONTHS.

NO MONTHLY PAYMENTS DUE

IF THE 1ST NOTE GOES INTO DEFAULT, CARDENAS THREE LLC SHOULD BE NOTIFIED RIGHT AWAY.

Should default be made in payment of interest when due, the whole sum of principal and interest shall become immediately due at the option of the Holder of this Note. Principal and interest payable in lawful money of the United States. If action be instituted on this note, I promise to pay such sum as the Court may fix as attorney's fees. This note is secured by a Deed of Trust to First American Title, a California corporation, as TRUSTEE.

JACQUELINE ANN MCKAYE BROWN

# EXHIBIT "E"

RECORDING REQUESTED BY:
First American Title

AND WHEN RECORDED MAIL TO:

CARDENAS THREE LLC

THIS SPACE FOR RECORDER'S USE ONLY:

Escrow No.: n/a                                                                                               Title Order No.:n/a

## SHORT FORM DEED OF TRUST AND ASSIGNMENT OF RENTS

THIS DEED OF TRUST, made February 24, 2020                                                    A.P. #644-461-10

JACQUELINE ANN MCKAYE BROWN, AN UNMARRIED WOMAN, herein called **Trustor**,
whose address is 1784 DEL MAR AVE., LAGUNA BEACH, CA 92651 and  First American Title, a California Corporation,
herein called Trustee, and **CARDENAS THREE LLC**, herein called BENEFICIARY,

**WITNESSETH:**  That Trustor IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE IN TRUST, WITH
POWER OF SALE that Property in Orange County, California, described as:

LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT "A" AND MADE A PART HEREOF
Also Known as: 1784 Del Mar Avenue, Laguna Beach, CA  92651
This deed of trust is second and junior in lien to a deed of trust recording concurrently herewith.

**TOGETHER WITH**  the rents, issues and profits thereof, SUBJECT, HOWEVER, to the right power and authority given to and
conferred upon Beneficiary by paragraph (10) of the provisions incorporated herein by reference to collect and apply such
rents, issues and profits.  For the **Purpose of Securing: 1.** Performance of each agreement of Trustor incorporated by
reference or contained herein. **2.** Payment of the indebtedness evidenced by one promissory note of even date herewith, and
any extensions or renewal thereof, in the principal sum of **$245,647.70** executed by Trustor in favor of Beneficiary or order. **3.**
Payment of such further sums as the then record owner of said property may borrow from Beneficiary, when evidenced by
another note (or notes) reciting it is so secured.

**DATED February 24, 2020**

JACQUELINE ANN MCKAYE BROWN

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document
to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF Los Angeles
On February 22, 2020
before me, Gerardo Roa Macias Jr
A Notary Public personally appeared
Jacqueline Ann Mckaye
Brown
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.
I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and
correct.
WITNESS my hand and official seal.

(Seal)

Signature

GERARDO ROA MACIAS JR.
COMM. # 2200099
LOS ANGELES COUNTY
NOTARY PUBLIC-CALIFORNIA
MY COMMISSION EXPIRES
JUNE 04, 2021

To Protect the Security of This Deed of Trust, Trustor Agrees: By the execution and delivery of this Deed of Trust and the note secured hereby, that the provisions (1) to (14), inclusive, of the fictitious deed of trust recorded in Santa Barbara County and Sonoma County October 18, 1961, and in all other counties October 23, 1961, in the book and at the page of Official Records in the office of the county recorder of the county where said property is located, noted below opposite the name of such county, viz.:

| County | Book | Page | County | Book | Page | County | Book | Page | County | Book | Page |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Alameda | 435 | 684 | Kings | 792 | 833 | Placer | 895 | 301 | Sierra | 29 | 335 |
| Alpine | 1 | 250 | Lake | 362 | 39 | Plumas | 151 | 5 | Siskiyou | 468 | 181 |
| Amador | 104 | 34 | Lassen | 171 | 471 | Riverside | 3005 | 523 | Solano | 1105 | 182 |
| Butte | 1145 | 1 | Los Angeles | T2055 | 899 | Sacramento | 4331 | 62 | Sonoma | 1851 | 389 |
| Calaveras | 145 | 152 | Madera | 810 | 170 | San Benito | 271 | 383 | Stanislaus | 1715 | 456 |
| Colusa | 296 | 617 | Marin | 1508 | 339 | San Bernardino | 5567 | 61 | Sutter | 572 | 297 |
| Contra Costa | 3978 | 47 | Mariposa | 77 | 292 | San Francisco | A332 | 905 | Tehama | 401 | 289 |
| Del Norte | 78 | 414 | Mendocino | 579 | 530 | San Joaquin | 2470 | 311 | Trinity | 93 | 366 |
| Eldorado | 588 | 456 | Merced | 1547 | 538 | San Luis Obispo | 1151 | 12 | Tulare | 2294 | 275 |
| Fresno | 4626 | 572 | Modoc | 181 | 851 | San Mateo | 4078 | 420 | Tuolumne | 135 | 47 |
| Glenn | 422 | 184 | Mono | 52 | 429 | Santa Barbara | 1878 | 860 | Ventura | 2062 | 386 |
| Humboldt | 657 | 5327 | Monterey | 2194 | 538 | Santa Clara | 5336 | 341 | Yolo | 653 | 245 |
| Imperial | 1091 | 501 | Napa | 639 | 86 | Santa Cruz | 1431 | 494 | Yuba | 334 | 486 |
| Inyo | 147 | 598 | Nevada | 305 | 320 | Shasta | 684 | 528 | | | |
| Kern | 3427 | 60 | Orange | 5889 | 611 | San Diego | Series 2 Book 1961 Page 183887 | | | | | |

(which provisions, identical in all counties are printed on the reverse hereof) are adopted and incorporated herein and made a part hereof as fully as though set forth herein at length; that he will observe and perform said provisions; and that the references to property, obligations, and parties set forth in this Deed of Trust.

The undersigned Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.

---

DO NOT RECORD

## REQUEST FOR FULL RECONVEYANCE
To be used only when note has been paid

To: First American Title, Trustee:                 Dated: _____

The undersigned is the legal owner and holder of all indebtedness secured by the within Deed of Trust. All sums secured by said Deed of Trust have been fully paid and satisfied; and you are hereby requested and directed , on payment to you any sums owing to you under the terms of said Deed of Trust, to cancel all evidences of indebtedness, secured by said Deed of Trust, delivered to you herewith together with said Deed of Trust, and to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, the estate now held by you under the same.

| MAIL RECONVEYANCE TO | |
|---|---|
| | |
| | |
| | |
| | |

Do not lose or destroy this Deed of Trust OR THE NOTE which it secures. Both must be delivered to the Trustee for cancellation before reconveyance will be made.

## DO NOT RECORD

The following is a copy of provisions (1) to (14), inclusive, of the fictitious deed of trust, recorded in each county of California, as stated in the foregoing Deed of Trust and incorporated by reference in said Deed of Trust as being a part thereof as if set forth at length therein.

To Protect the Security of This Deed of Trust, Trustor Agrees:

1.    To keep said property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and material furnished therefor; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

2.    To provide, maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

3.    To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

4.    To pay: at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock; when due, all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto; all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purpose; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

5.    To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

6.    That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such money(ies) received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

7.    That by accepting payment of any sum secured hereby its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

8.    That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

9.    That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." Five years after issuance of such full reconveyance, Trustee may destroy said note and this Deed (unless directed in such request to retain them).

10.    That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

11.    That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

12.    Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

13.    That this Deed applies to, inures to, the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the note secured hereby whether, or not named as Beneficiary herein. In this Deed, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

14.    That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

**EXHIBIT "F"**

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖ 97.00
\* S R 0 0 1 3 8 2 3 9 6 2 $ \*
2022000233302 12:54 pm 06/30/22
227 RW9A N15   5
0.00 0.00 0.00 0.00 12.00 0.00 0.000.0075.00 3.00

PLEASE COMPLETE THIS INFORMATION
RECORDING REQUESTED BY:

## LAWYERS TITLE COMPANY

AND WHEN RECORDED MAIL TO:

**C&H Trust Deed Service**
1 Orchard Rd., Suite 110
Lake Forest, California 92630

Space above this line for recorder's use only

# NOTICE OF DEFAULT AND ELECTION
# TO SELL UNDER DEED OF TRUST

Title of Document

THIS AREA FOR

RECORDER'S

USE ONLY

THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
($3.00 Additional Recording Fee Applies)

RECORDING REQUESTED BY
    LAWYERS TITLE

RECORDING REQUESTED BY        ]
AND WHEN RECORDED MAIL TO     ]
                              ]
C&H Trust Deed Service        ]
1 Orchard Rd., Suite 110      ]
Lake Forest, California 92630-8315    ]

_____ SPACE ABOVE THIS LINE FOR RECORDER'S USE _____

A.P.N. *644-461-10* #0594б078        Trustee's Sale No. 22-100250/ McKaye

ATTENTION RECORDER: THE FOLLOWING REFERENCE TO AN ATTACHED SUMMARY IS ONLY
APPLICABLE TO NOTICE(S) MAILED TO THE TRUSTOR PER CIVIL CODE 2923.3(c)(1).

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**Pursuant to California Civil Code Section 2924c(b)(1), be advised of the following:**

# NOTICE OF DEFAULT AND ELECTION
## TO SELL UNDER DEED OF TRUST

## IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE
BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY
COURT ACTION,** and you may have the legal right to bring your account in good
standing by paying all of your past due payments plus permitted costs and expenses
within the time permitted by law for reinstatement of your account, which is normally five
business days prior to the date set for the sale of your property. No sale date may be
set until three months from the date this notice of default may be recorded (which date
of recordation appears on this notice). This amount is **$259,688.96** as of **June 28, 2022**
and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as
insurance and taxes) required by your note and deed of trust or mortgage. If you fail to
make future payments on the loan, pay taxes on the property, provide insurance on the
property, or pay other obligations as required in the note and deed of trust or mortgage,
the beneficiary or mortgagee may insist that you do so in order to reinstate your account
in good standing. In addition, the beneficiary or mortgagee may require as a condition to
reinstatement that you provide reliable written evidence that you paid all senior liens,
property taxes, and hazard insurance premiums.

- Page 1 of 4 -

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**CARDENAS THREE, LLC**
**c/o C&H TRUST DEED SERVICE**       **(949) 305-8901**
**1 ORCHARD RD., SUITE 110**        **(949) 305-8406 fax**
**LAKE FOREST, CALIFORNIA 92630-8315**

If you have any questions, you should contact a lawyer or the government agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure. Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN THAT **C&H TRUST DEED SERVICE** is the duly appointed or substituted Trustee or authorized agent of the current beneficiary under the Deed of Trust executed by **JACQUELINE MCKAYE** as the original Trustor(s), to **TITLE 365** as the original Trustee, and **CARDENAS THREE, LLC** as the original Beneficiary(ies), dated **01/19/2017** and recorded on **01/20/2017** as Instrument No. **2017-000028437** in Book **xxx**, Page **xxx** in Official Records in the Office of the Recorder of **ORANGE** County, California describing land therein as: **more fully described in said Deed of Trust**, said obligations including ONE PROMISSORY NOTE IN THE ORIGINAL AMOUNT OF **$806,000.00.**

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that **PAYMENT HAS NOT BEEN MADE OF THE REMAINING PRINCIPAL BALANCE AND ACCRUED INTEREST WHICH CAME ALL DUE AND PAYABLE ON FEBRUARY 21, 2022, WITH SUBSEQUENTLY ACCRUED INTEREST, AND FORECLOSURE FEES AND COSTS HEREIN.**

**NOTHING HEREIN SHALL BE CONSTRUED AS A WAIVER OF ANY ADDITIONAL FEES OR DEFAULTS OWING THE BENEFICIARY UNDER THE DEED OF TRUST PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS OR OF THE RIGHT TO DEMAND PAYMENT OF RECURRING AND SENIOR OBLIGATIONS AS THEY MAY COME DUE.**

That by reason thereof, the present beneficiary under such Deed of Trust, has executed and delivered to said duly appointed Trustee a written Declaration of Default and Demand for Sale, and has deposited with said duly appointed Trustee such Deed of Trust and all documents evidencing obligations secured thereby, and (1) does hereby declare all sums secured thereby immediately due and payable and (2) has elected to cause the trust property to be sold to satisfy the obligations secured thereby.

C&H Trust Deed Service, as agent for the Beneficiary

Dated: June 28, 2022

Coby Halavais, Trustee's Sale Officer

**Declaration of Mortgage Servicer**
**Pursuant to Civil Code § 2923.5(b)**

Property Address: 1784 Del Mar Avenue
Laguna Beach, California

The undersigned, as an authorized agent or employee of the mortgage servicer named below, declares that:

☐ The mortgage servicer has contacted the borrower pursuant to California Civil Code § 2923.5(a)(2) "to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure". Thirty (30) days, or more, have passed since the initial contact was made.

☐ Despite the exercise of due diligence pursuant to California Civil Code § 2923.5(e), the mortgage servicer has been unable to contact the borrower "to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure". Thirty (30) days, or more, have passed since these due diligence efforts were satisfied.

☐ No contact was required by the mortgage servicer because the individual(s) did not meet the definition of "borrower" pursuant to Civil Code § 2920.5(c).

☑ The requirements of Cal. Civil Code § 2923.5 do not apply because the loan is not secured by a first mortgage or first deed of trust that secures a loan, or that encumbers real property, described in Civil Code § 2924.15(a).

I certify that this declaration is accurate, complete and supported by competent and reliable evidence, which the mortgage servicer has reviewed to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

Dated: 6-16-22

Cardenas Three, LLC

EXHIBIT "G"

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

|||||||||||||||||||||||||||||||||||||||||||||||| 94.00
* S R 0 0 1 3 9 8 0 8 5 4 $ *
**2022000319053 11:44 am 09/28/22**

63 RW10A S13   4
0.00 0.00 0.00 0.00 9.00 0.00 0.000.0075.00 3.00

**RECORDING REQUESTED BY**
LAWYERS TITLE COMPANY

AND WHEN RECORDED MAIL TO
**C&H TRUST DEED SERVICE**
**1 ORCHARD RD. SUITE 110**
**LAKE FOREST, CA 92630**

---

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

# SUBORDINATION AGREEMENT

RECORDING REQUESTED BY
   LAWYERS TITLE

| | |
|---|---|
| RECORDING REQUESTED BY | ] |
| *C&H TRUST DEED SERVICE* | ] |
| AND WHEN RECORDED MAIL TO | ] |
| | ] |
| CARDENAS THREE, LLC | ] |
| 12223 HIGHLAND AVE., SUITE 106-553 | ] |
| RANCHO CUCAMONGA, CA 91739 | ] |

SPACE ABOVE THIS LINE FOR RECORDER'S USE__

Title Order No. 0594 46078     Loan No.     T.S. No. 22-100250

## SUBORDINATION AGREEMENT

**NOTICE: THIS SUBORDINATION AGREEMENT RESULTS IN YOUR SECURITY
INTEREST IN THE PROPERTY BECOMING SUBJECT TO AND OF LOWER PRIORITY
THAN THE LIEN OF SOME OTHER OR LATER SECURITY INSTRUMENT.**

THIS AGREEMENT is made this _22_ day of September, 2022 by Cardenas Three, LLC, as the Beneficiary under the below-described Note and Deed of Trust.

### WITNESSETH

WHEREAS, JACQUELINE MCKAYE did execute a Deed of Trust dated January 19, 2017 in favor of Cardenas Three, LLC, as Beneficiary, to secure a promissory Note in the original sum of $806,000.00 and said Deed of Trust was recorded in official records of Orange County on January 20, 2017 as Instrument number 2017-000028437 (hereafter the "Cardenas Three" lien). Said Deed of Trust encumbers the real property commonly known as 1784 Del Mar Ave., Laguna Beach, California and bearing the legal description as shown at Exhibit "A" below (hereafter the "Property").

WHEREAS, JACQUELINE MCKAYE did subsequently execute a Deed of Trust dated February 24, 2020 in favor of Mortgage Electronic Registration Systems, Inc., (MERS), acting solely as nominee for Caliber Home Loans, Inc., as Beneficiary, to secure a promissory Note in the original sum of $608,465.00 and said Deed of Trust was recorded in official records of Orange County on February 28, 2020 as Instrument number 2020-000088140 (hereafter the "Caliber" lien). Said Deed of Trust encumbers the Property above.

WHEREAS, the Caliber lien was made and issued with the understanding and agreement that it would unconditionally be and remain at all times a lien or charge upon the land hereinbefore described, senior, prior and superior to the Cardenas Three Deed of Trust.

WHEREAS, by this document, Cardenas Three intends to and does provide and agree that the Caliber lien is unconditionally senior, prior and superior to the lien of the Cardenas Three Deed of Trust.

NOW, THEREFORE, in consideration of the mutual benefits accruing to the parties hereto and other valuable consideration, the receipt and sufficiency of which consideration is hereby acknowledged, it is hereby declared, understood and agreed as follows:

(1)     That the Cardenas Three lien shall be and hereby is subordinated to be junior and inferior to the Caliber lien, and any renewals or extensions thereof, and the Caliber lien shall unconditionally be and remain at all times a lien or charge on the Property senior, prior and superior to the Cardenas Three Deed of Trust. Additionally, the Notice of Default issued and recorded by Cardenas

Three, LLC on June 30, 2022 as Instrument number 2022-000233302, as well as any and all activities related in any way to foreclosure of the Cardenas Three Deed of Trust, shall not and does not impair, affect or challenge the priority, seniority and/or enforceability of the Caliber Deed of Trust.

(2)      That this agreement shall be the whole and only agreement with regard to subordination of the lien or charge of the Cardenas Three Deed of Trust to the lien of the Caliber Deed of Trust.

**CARDENAS THREE, LLC**

Date: 9-22-22

By: _____

Nefertiti Long

Chief Operating Officer

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

---

STATE OF CALIFORNIA      )
                          ) ss.
COUNTY OF San Bernardino  )

On September 22, 2022, before me, ——Elizabeth Velazquez, Notary Public "Notary public", personally appeared ——Nefertiti Long——, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

By: _____



ELIZABETH VELAZQUEZ
COMM. # 2397847
NOTARY PUBLIC - CALIFORNIA
SAN BERNARDINO COUNTY
My Comm. Expires March 20, 2026

**EXHIBIT A**
Legal Description

The land hereinafter referred to is situated in the City of Laguna Beach, County of Orange, State of CA, and is described as follows:

Lot 8, Block in Block 64, of Arch Beach Heights, in the City of Laguna Beach, County of Orange, State of California; as per map recorded in Book 7, Page 9 and 10 of Miscellaneous Maps, in the Office of the County Recorder of said County.

APN: 644-461-10

EXHIBIT "H"

**RECORDING REQUESTED BY**
LAWYERS TITLE COMPANY

AND WHEN RECORDED MAIL TO
**C&H TRUST DEED SERVICE**
**1 ORCHARD RD. SUITE 110**
**LAKE FOREST, CA 92630**

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

94.00

\* S R 0 0 1 3 9 8 5 3 9 3 S \*

**2022000321559 10:23 am 09/30/22**

9 RW9A N34   5

0.00 0.00 0.00 0.00 12.00 0.00 0.000.0075.00 0.00

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

## NOTICE OF TRUSTEE'S SALE

RECORDING REQUESTED BY
LAWYERS TITLE

RECORDING REQUESTED BY                         ]
AND WHEN RECORDED MAIL TO                       ]
**C&H TRUST DEED SERVICE**                      ]
**1 ORCHARD RD., SUITE 110**                    ]
**LAKE FOREST, CALIFORNIA 92630-8315**          ]
_____ SPACE ABOVE THIS LINE FOR RECORDER'S USE ___
Loan No.                Title Order No. 059 460078 Trustee's Sale No. 22-100250

ATTENTION RECORDER:    THE FOLLOWING REFERENCE TO AN ATTACHED SUMMARY IS ONLY
APPLICABLE TO NOTICE(S) MAILED TO THE TRUSTOR.

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

# NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED JANUARY 19, 2017.   UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.   IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On **OCTOBER 28, 2022** at **10:00 a.m.**, **C&H TRUST DEED SERVICE,** as duly appointed or substituted Trustee, under the certain Deed of Trust executed by **JACQUELINE MCKAYE** as Trustor, to secure obligations in favor of **CARDENAS THREE, LLC** as Beneficiary, recorded on **01/20/2017** as Instrument No. **2017-000028437** of Official Records in the office of the County Recorder of **ORANGE** County, California.

**WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER** for cash, or cashier's check, (payable at the time of sale in lawful money of the United States by cash, a cashier's check drawn by a state or national bank, a state or federal credit union, or a state or federal savings and loan association, or savings bank specified in section 5102 of the Financial Code and authorized to business in this state) *(CASHIER'S CHECKS MUST BE DIRECTLY PAYABLE TO "C&H TRUST DEED SERVICE")*

**ON THE FRONT STEPS TO THE ENTRANCE OF THE ORANGE CIVIC CENTER LOCATED AT 300 E. CHAPMAN, ORANGE, CALIFORNIA**

all right, title and interest conveyed to and now held by it under said Deed of Trust in and to the following described real property situated in the aforesaid County and State, to wit: **AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST**

## NOTICE OF TRUSTEE'S SALE

The street address or other common designation of the above-described property is purported to be

**1784 DEL MAR AVENUE**
**LAGUNA BEACH, CALIFORNIA   92651**
**ASSESSOR'S PARCEL NO.   644-461-10**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and/or other common designation, if any, shown hereinabove.

Said sale will be made, but without covenant or warranty, express or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, if any, under the terms of the Deed of Trust, estimated fees, charges and expenses of the trustee and of the trusts created by said Deed of Trust, to wit:

Said property is being sold for the express purpose of paying the obligations secured by said Deed of Trust, including fees and expenses of sale.   The total amount of the unpaid principal balance, interest thereon, together with reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Trustee's Sale is estimated to be **$307,750.15.**

The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell.   The undersigned Trustee, or predecessor Trustee, has caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located and more than three months have elapsed since such recordation.

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction.   You will be bidding on a lien, not on the property itself.   Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien.   If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information.   If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

## NOTICE OF TRUSTEE'S SALE

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code.   The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale.   If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call (949) 860-9155 for information regarding the trustee's sale or visit www.chtrustdeed.com for information regarding the sale of this property, using the file number assigned to this case **22-100250**.   Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site.   The best way to verify postponement information is to attend the scheduled sale.

NOTICE TO TENANT: You may have a right to purchase this property after the trustee auction pursuant to Section 2924m of the California Civil Code. If you are an "eligible tenant buyer," you can purchase the property if you match the last and highest bid placed at the trustee auction. If you are an "eligible bidder," you may be able to purchase the property if you exceed the last and highest bid placed at the trustee auction. There are three steps to exercising this right of purchase. First, 48 hours after the date of the trustee sale, you can call (949) 305-8901, or visit this internet website, www.chtrustdeed.com, using the file number assigned to this case **22-100250** to find the date on which the trustee's sale was held, the amount of the last and highest bid, and the address of the trustee. Second, you must send a written notice of intent to place a bid so that the trustee receives it no more than 15 days after the trustee's sale. Third, you must submit a bid so that the trustee receives it no more than 45 days after the trustee's sale. If you think you may qualify as an "eligible tenant buyer" or "eligible bidder," you should consider contacting an attorney or appropriate real estate professional immediately for advice regarding this potential right to purchase.

PLEASE TAKE NOTICE THAT if the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be return of monies paid to the Trustee, and the successful bidder shall have no further recourse.   Further, if the foreclosure sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the deposit paid and shall have no further recourse or remedy against the Mortgagor, Mortgagee, or Trustee herein.

If you have previously been discharged in bankruptcy, you may have been released of personal liability for this loan in which case this notice is intended to exercise the note holders rights against the real property only.

As required by law, you are notified that a negative credit reporting may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligation.

## NOTICE OF TRUSTEE'S SALE

FOR TRUSTEE'S SALE DATES, BIDS AND POSTPONEMENT INFORMATION, PLEASE CALL (949) 860-9155 OR VISIT www.chtrustdeed.com.

FOR ANY OTHER INQUIRIES, INCLUDING LITIGATION OR BANKRUPTCY MATTERS, PLEASE CALL (949) 305-8901 OR FAX (949) 305-8406.

**C&H TRUST DEED SERVICE, AS SUCCESSOR
TRUSTEE**

DATED: September 28, 2022        _____

Coby Halavais
Trustee's Sale Officer

**EXHIBIT "I"**

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

|| ||||| ||||| |||||| ||||| |||||||| ||||| 94.00
* $ R 0 0 1 4 0 1 6 2 5 6 $ *
**2022000338276 8:09 am 10/19/22**

90 CR-SC06 N15    4
0.00 0.00 0.00 0.00 9.00 0.00 0.000.0075.00 3.00

APN No.: **644-461-10**
Recording requested by:
Quality Loan Service Corp

When recorded mail to:
Quality Loan Service Corporation
2763 Camino Del Rio South
San Diego, CA 92108

---

TS No.: **CA-22-943289-AB**                                        Space above this line for Recorder's use
Order No.: **220494375-CA-VOI**
Property Address: **1784 DEL MAR AVE, LAGUNA BEACH, CA 92651-3812**

# IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL
## UNDER DEED OF TRUST

## NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED TO THE COPY PROVIDED TO THE MORTGAGOR OR TRUSTOR (Pursuant to Cal. Civ. Code § 2923.3)

## 注：本文件包含一个信息摘要

## 참고사항: 본 첨부 문서에 정보 요약서가 있습니다

## NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO

## TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP

## LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this Notice of Default may be recorded (which date of recordation appears on this notice). This amount is $69,721.88 as of 10/18/2022 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of

TS No.: **CA-22-943289-AB**

reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three-months after this Notice of Default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

CALIBER HOME LOANS, INC.
C/O Quality Loan Service Corporation
2763 Camino Del Rio S
San Diego, CA 92108
619-645-7711

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN: That the undersigned is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 2/24/2020, executed by JACQUELINE ANN MCKAYE BROWN , AN UNMARRIED WOMAN, as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR CALIBER HOME LOANS, INC., A CORPORATION, ITS SUCCESSORS AND ASSIGNS, as beneficiary, recorded 2/28/2020, as Instrument No. 2020000088140,    of Official Records in the Office of the Recorder of ORANGE County, California describing land therein: as more fully described in said Deed of Trust.

Said obligations including 1 NOTE(S) FOR THE ORIGINAL sum of $608,465.00, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

The installments of principal and interest which became due on 6/1/2021, and

TS No.: **CA-22-943289-AB**

all subsequent installments of principal and interest through the date of this
Notice, plus amounts that are due for late charges, delinquent property taxes,
insurance premiums, advances made on senior liens, taxes and/or insurance,
trustee's fees, and any attorney fees and court costs arising from or associated
with the beneficiaries efforts to protect and preserve its security, all of which
must be paid as a condition of reinstatement, including all sums that shall
accrue through reinstatement or pay-off. Nothing in this notice shall be
construed as a waiver of any fees owing to the Beneficiary under the Deed of
Trust pursuant to the terms of the loan documents.

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Pursuant to the attached Declaration, the mortgage servicer declares that it has contacted the borrower, tried with due diligence to contact the borrower as required by California Civil Code § 2923.55 or § 2923.5, or is otherwise exempt from the requirements of § 2923.55 and §2923.5.

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holders right's against the real property only.

QUALITY MAY BE CONSIDERED A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Dated:   OCT 1 8 2022        Quality Loan Service Corp., Trustee

By:  Adriana Banuelos, Assistant Vice President

## CALIFORNIA DECLARATION OF COMPLIANCE
## WITH (CAL. CIV. CODE 2923.55)

Borrower(s):      JACQUELINE ANN MCKAYE BROWN
Property:         1784 DEL MAR AVE, LAGUNA BEACH, CA 92651-3812
Loan No.:         ████████
Trustee Sale No:  .

The undersigned, as an authorized agent or employee of the mortgage servicer named below, declares as follows:

1. ☐ The mortgage servicer has contacted the borrower to assess the borrowers financial situation and explore options for the borrower to avoid foreclosure as required California Civil Code 2923.55.
2. ☑ The mortgage servicer has tried with due diligence to contact the borrower as required by California Civil Code 2923.55 but has not made contact despite such due diligence. The due diligence efforts were satisfied on 02/02/2021.
3. ☐ No contact was required because the individual did not meet the definition of the "borrower" under California Civil Code 2920.5(c).
4. ☐ The requirements of California Civil Code 2923.55 do not apply because the loan is not secured by a first lien mortgage or deed of trust on residential real property that meets the criteria in California Civil Code 2924.15(a)(1) ("owner-occupied") or 29424.15(a)(2) ("occupied by tenant")

I certify that this declaration is accurate, complete, and supported by competent and reliable evidence which the mortgage servicer has reviewed to substantiate the borrower's default and the right to foreclose, including the borrowers loan status and loan information.

Dated:  August 17, 2022

Caliber Home Loans, Inc.

_____
Signature of Agent or Employee

Ms Kendra C. Kendall
Printed name of Agent or Employee

Pre-FC Evaluation Manager
Title of Agent or Employee

EXHIBIT "J"

AFFIDAVIT OF ELIGIBLE BIDDER
PROSPECTIVE OWNER-OCCUPANT (Cal. Civ. Code § 2924m)

The undersigned, being of legal age, being first duly sworn under oath, deposes and says as follows:

1.      I submit this bid pursuant to Cal. Civ. Code § 2924m regarding the property located at 1784 Del Mar Ave, Laguna Beach, CA 92651 ("Property"). The Property was the subject of Trustee Sale # 22-100250 on December 28, 2022.

2.      I am an eligible bidder on the Property because I am a Prospective Owner Occupant pursuant to Cal. Civ. Code § 2924m(a)(1).

3.      I will occupy the Property as my primary residence within 60 days of the trustee's deed being recorded, and will maintain my occupancy for at least one year.

3.      I am not the mortgagor or trustor.

4.      I am not the child, spouse, or parent of the mortgagor or trustor.

5.      I am not the grantor of a living trust that was named in the title to the Property when the notice of default was recorded.

6.      I am not an employee, officer, or member of the mortgagor or trustor.

7.      I have no ownership interest in the mortgagor.

8.      I am not acting as an agent of any other person or entity in purchasing the Property.

9.      My name is Spencer Currie. I can be reached at the address 22145 Pheasant St, Lake Forest, CA 92630. I can be reached at (818) 439-2604

I certify under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: __12_/_28_/_22__                          _____
                                                Spencer Currie

Executed at (City and State): _Northridge, California_

## ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _Los Angeles_ )

On _December 23, 2022_ before me, _Mohammad Kishawi, Notary Public_

(insert name and title of the officer)

personally appeared _Spencer Currie_,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

MOHAMMAD KISHAWI
Notary Public - California
Los Angeles County
Commission # 2331375
My Comm. Expires Aug 11, 2024

(Seal)

Exhibit "K"

## <u>DECLARATION OF JACQUELINE ANN McKAYE BROWN</u>

**pursuant to Civil Code Sec. 2924m, in support of Notice of Intent to Bid to Repurchase**

**1784 Del Mar Ave., Laguna Beach, CA 92651**

The undersigned. being of legal age. hereby declares as follows:

1. I submit this Notice of Intent to Bid pursuant to Cal. Civ. Code, Sec. 2924m regarding the property located at 1784 Del Mar Ave.. Laguna Beach. CA 92651 (the "Property"). The Property was the subject of Trustee Sale #22-100250 on December 28. 2022.

2. I am an Eligible Bidder on the Property because I am a Prospective Owner Occupant pursuant to Cal. Civ. Code. Sec. 2924m(a)(1).

3. I will occupy the Property as my primary residence within 60 days of the Trustee's Deed being recorded. and I will maintain my occupancy for at least one year.

4. I am not any of the following:

(i) The mortgagor or trustor on grounds that the (a) Deed of Trust in the amount of $806.000. recorded on January 20. 2017. as Instrument No. 2017000038168 in Orange County. CA. in favor of Cardenas Three. LLC. as beneficiary. is void or voidable and (b) unrecorded Deed of Trust in the amount of $245.647.70 purportedly signed on February 24. 2020. in favor of Cardenas Three. LLC. as beneficiary. is fraudulent and therefore void or voidable.

(ii) The child. spouse. or parent of the mortgagor or trustor.

(iii) The grantor of a living trust that was named in the title to the property when the notice of default was recorded.

(iv) An employee. officer. or member of the mortgagor or trustor.

(v) A person with an ownership interest in the mortgagor. unless the mortgagor is a publicly traded company.

(vi) I am not acting as the agent of any other person or entity in purchasing the real property.

5. My name is Jacqueline Ann McKaye Brown. My address is 1784 Del Mar Ave.. Laguna Beach. CA 92651. I can be reached by phone at (949) 339-7824.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct

Dated: January 10. 2023

_____
**Jacqueline Ann McKaye Brown**

# ACKNOWLEDGMENT

A notary public or other officer completing this
certificate verifies only the identity of the individual
who signed the document to which this certificate is
attached, and not the truthfulness, accuracy, or
validity of that document.

State of California
County of _Orange_ )

On _January 10th, 2023_ before me, _Nate Cunningham, Notary Public_
(insert name and title of the officer)

personally appeared _Jacqueline Ann McKaye Brown_ ,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____     **(Seal)**

NATE CUNNINGHAM
Notary Public - California
Orange County
Commission # 2337621
My Comm. Expires Nov 16, 2024

Exhibit "L"

RECORDING REQUESTED BY
LAWYERS TITLE

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

||||||||||||||||||||||||||||||||||||||| 10.00

*$R0014151 3 9 5 S*

**2023000008788 10:04 am 01/12/23**

376 419A T09 2 05

399.03 399.02 0.00 0.00 3.00 0.00 0.000.000.00 0.00

RECORDING REQUESTED BY
*C&H TRUST DEED SERVICE*
AND WHEN RECORDED MAIL TO

SPENCER CURRIE

1784 DEL MAR AVE

LAGUNA BEACH, CA 92651

]
]
]
]
]
]
]
]

Order No. LTC 05946078

SPACE ABOVE THIS LINE FOR RECORDER'S USE

Trustee's Sale No. 22-100250/ MCKAY

# TRUSTEE'S DEED UPON SALE

APN No. 644-461-10

The undersigned grantor declares:
1)   The grantee WAS NOT the foreclosing beneficiary
2)   The amount of the unpaid debt together with costs was .... $323,882.79
3)   The amount paid by the grantee at the Trustee's Sale was : $725,100.00
4)   The documentary transfer tax is ......................... $ __798.05__
5)   Said property is in the City of LAGUNA BEACH

C&H Trust Deed Service (herein called "Trustee"), as the duly appointed Trustee under the Deed of Trust hereinafter described, does hereby grant and convey, without warranty express or implied, to

SPENCER CURRIE

(herein called Grantee), all of its right, title and interest in and to that certain property situated in the County of ORANGE, California, as follows:

All that certain real property situated in the County of Orange, State of California, described as follows:
LOT 8, BLOCK 64, OF ARCH BEACH HEIGHTS, IN THE CITY OF LAGUNA BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 7, PAGES 9 AND 10 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

SITUS:      1784 DEL MAR AVENUE
            LAGUNA BEACH, CALIFORNIA

"This document filed for record by Lawyers Title
as an accommodation only. It has not
been examined as to its execution
or as to its effect upon the title."

RECITALS:

This conveyance is made under the powers conferred on the Trustee by the Deed of Trust dated 01/19/2017 and executed by JACQUELINE MCKAYE as Trustor(s), and recorded on 01/20/2017 as Instrument number 2017-000028437 in Book xxx, Page xxx of Official Records of ORANGE County, California, and after appointment and substitution of the Trustee under the Deed of Trust by an instrument(s) recorded on 07/29/2022 as Instrument number(s) 2022-000262462, in Book xxx and Page xxx of Official Records of ORANGE County, California, and after fulfillment of the conditions specified in said Deed of Trust and compliance in all respects with the laws of the State of California authorizing this conveyance.

TRUSTEE'S DEED UPON SALE
Page 2 of 2

Default occurred as set forth in a Notice of Default and Election to Sell which
was recorded in the office of the county Recorder of said county.
All requirements of law regarding the mailing of copies of notices or the
publication of a copy of the Notice of Default or the personal delivery of the
copy of the Notice of Default and the mailing, posting and publication of copies
of the Notice of Sale, and all other requirements imposed by California law as a
predicate to issuance of this conveyance, have been complied with.

Said property was sold by said Trustee at public auction on **12/28/2022** at the
place named in the Notice of Sale, in the County of **ORANGE**, State of California,
in which the property is situated.  Grantee, being the highest bidder at such
sale, became the purchaser of said property, and paid therefore to said Trustee
the amount being $725,100.00 in lawful money of the United States, or by the
satisfaction, pro tanto, of the obligations then secured by said Deed of Trust.


    IN WITNESS WHEREOF, C&H TRUST DEED SERVICE, as Trustee, has this day
caused its name to be hereunto affixed by its officer thereunder duly appointed
by its Corporation By Laws.

                                    C&H TRUST DEED SERVICE, as Trustee

Dated: ___1/10/2023___              By:_____
                                    Coby Halavais
                                    Trustee's Sale Officer


| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document. |
| --- |


STATE OF CALIFORNIA        )
                           ) ss.
COUNTY OF _Orange_         )

On _January 10, 2023_, before me, _____Eric Y. Kim_____
"Notary public", personally appeared __Coby Halavais_____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and
that by his/her/their signature(s) on the instrument the person(s), or the
entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California
that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

By:_____

ERIC Y. KIM
Notary Public - California
Orange County
Commission # 2304809
My Comm. Expires Sep 12, 2023